**Robert S. JOHNSON, Jr.; Charles H. Blessing, Jr.; Bruce E. Sweitzer, Jr.; Karl E. Henshaw; James R. Snyder; George B. Calaman; Robert A. Shifflet; John Oyler; Barry L. Sechrist; Marshall E. Leonard; Michael J. Gaffney; Paul J. Lehr; Gregory L. Dittenhafer; Bradley H. Clements; Alan B. Evans; David R. Watkins; Bernard A. Kopchinski; Dexter A. Kenyon; Raymond C. Sier; Melvin F. Breeswine; Hugh R. Myers; Dean E. Wakeman; Scott J. Eby; Douglas A. Hake; Darrell W. Kehr; Charles A. Hiden; Palmer Price; Plaintiffs,**

v.

**UNITED STEELWORKERS OF AMERICA, DISTRICT 7, LOCAL UNION NO. 2378–B; the York Water Company; Defendants.**

Civ. A. No. 1:CV–93–67.

United States District Court, M.D. Pennsylvania.

Jan. 27, 1994.

Donald L. Reihart, Law Office of Donald Reihart, York, PA, for plaintiffs.

Joseph Lurie, Galfand, Berger, Lurie & March, Philadelphia, PA, Melvin P. Stein, Pittsburgh, PA, for United Steelworkers of America.

Vincent Candiello, Brian P. Murphy, Morgan, Lewis & Bockius, Harrisburg, PA, for York Water Co.

## MEMORANDUM

CALDWELL, District Judge.

Pending are the motions of Defendants; United Steelworkers of America, District 7 (the "Union"), and the York Water Company ("York Water"); for summary judgment. We exercise jurisdiction according to 28 U.S.C. § 1331.

### I. *Facts*

At the time of the actions challenged in this lawsuit, the Union represented the employees of York Water according to a collective bargaining agreement that became effective May 1, 1991. That contract provided that "... the company agrees to give all employees not assigned to shift work a 40 hour week except as provided for in Section 4 of this Article." *See* Exh. A to the Complaint. Further, it provided that employees in the distribution and maintenance and grounds areas would be given 44–hour work weeks "as long as work is available." *Id.* Skilled maintenance workers would be given 45–hour work weeks "as long as work was available." *Id.* Employees would be paid 50 per cent more for any hours in excess of eight in a day or 40 in a week.

In August, 1991, York Water announced that, effective the next month, all of these

employees would be allowed only 40–hour work weeks. *See* Exh. A to Plaintiffs' Brief in Opposition. Plaintiffs, 27 affected employees, allege that this action violated the collective bargaining agreement's promise of guaranteed overtime "as long as work is available" because the extra work was being subcontracted. Further, they allege that the Union's representatives failed to meet their duty of fair representation because they did not properly argue this issue during an arbitration session.[1]

## II. *Law and Discussion*

### A. *Standard for Summary Judgment*

Summary judgment is appropriate when there remain no genuine issues as to any material facts and judgment may be entered as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a movant submits that there is no genuine issue as to a material fact, its opponent must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd., et al v. Zenith Radio Corp., et al*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. *Hybrid Section 301 Cases*

■ Plaintiffs claim that the Union violated its duty of fair representation. The duty arises from a union's role as employees' exclusive bargaining representative in issues involving "conditions of employment." 29 U.S.C. § 159(a). From that status, the Supreme Court has established that a certified union has a duty of fair representation to its members. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967); *Felice v. Sever*, 985 F.2d 1221, 1226 (3d Cir. 1993). The duty acts as a counterbalance to the union's position as exclusive bargaining representative. *Masy v. New Jersey Transit Rail Operations, Inc.*, 790 F.2d 322, 327–28 (3d Cir.1986). The standard by which we judge a union's conduct is to ask if the challenged actions were "arbitrary, discriminatory, or in bad faith." *Vaca, supra; see also, Riley v. Letter Carriers*, 668 F.2d 224, 228 (3d Cir.1981). The conduct of a union official in handling grievances is not deemed arbitrary or perfunctory when it is merely inept or negligent. *Findley v. Jones Motor Freight*, 639 F.2d 953, 960 n. 2 (3d Cir.1981); *see also, Freeland v. Harley Davidson, Inc.*, slip op. no. 92–1256, 1993 WL 603999 (M.D.Pa. July 28, 1993) (Caldwell, J.). The United States Court of Appeals for the Sixth Circuit recently described the standard a plaintiff must meet.

> [A] union breaches its duty of fair representation only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness" as to be irrational or arbitrary. Merely characterizing a union's actions in conclusory terms is insufficient to withstand summary judgment. Rather, to meet the burden of proof as to the union's breach of its duty of fair representation, a plaintiff must establish by substantial evidence that the union acted arbitrarily, discriminatorily, or with bad faith.

*Painter v. Mazda Motor Manufacturing (USA) Corp.*, No. 92–1516, 1993 WL 185181 at *4, 143 L.R.R.M. 2568 (6th Cir. May 27, 1993), *quoting and citing Airline Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). Finally, a plaintiff must show that the union representative "acted with a bad faith motive." *Medlin v. Boeing Vertol Co.*, 620 F.2d 957, 961 (3d Cir.1980).

■ At the same time they make their claim against the Union, Plaintiffs allege that York Water, acting in concert with the Union, violated the collective bargaining agreement in violation of the Labor Management Relations Act, 29 U.S.C. § 185, *et seq.* The two claims, abrogation of the duty of fair representation and violation of the collective bargaining agreement, are inextricably intertwined; the sort of action presented by Plaintiffs is known as a "hybrid" action. *See*

---

1. The complaint and various depositions also refer to grievances over supervisors performing bargaining unit work. Plaintiffs, however, ignore this claim in their brief and we will not address it in this memorandum. Rather, we will focus, as have the parties, on the subcontracting issue.

*Souter v. Int'l Union, U.A.W.A.,* 993 F.2d 595 (7th Cir.1993). For a plaintiff to prevail in a hybrid action, he must prove his case against *both* the union and the company. *DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983); *Felice,* 985 F.2d at 1226; *Souter, supra,* at 598. We will, then, consider in turn the claims Plaintiffs make against the Union and York Water, bearing in mind Plaintiffs' dual obligations.

### C. *Union Breach of Duty of Fair Representation*

Defendant York Water describes the complaint as raising five allegations of Union misconduct. *See* Defendant York Water's Brief in Support at 3. However, Plaintiffs argue only two points in their brief and we will focus on these for purposes of this analysis.

■ Plaintiffs first assert that the Union representative Joseph Pozza breached a duty by denying their request to have an attorney—paid by Plaintiffs—present at the arbitration session that addressed the hour-reduction grievances. The employees believed the issue to be addressed at the arbitration was sufficiently complex that legal counsel was necessary. They sent a letter to Mr. Pozza urging him to allow them to procure counsel, noting as well that York Water would be represented. Plaintiffs allege that Mr. Pozza responded that he would handle the arbitration himself because he was "as good as four lawyers." *See* Affidavit of Charles Blessing at ¶ 8. Plaintiffs further allege that Mr. Pozza threatened to conceal the location of the arbitration so that they could not bring an attorney over his objection.[2]

"[N]o court has adopted the rule that employees are entitled to independently retained counsel in arbitration proceedings, or that the exclusion of such attorneys from arbitration violates the duty of fair representation." *Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480, 1483 (9th Cir.1985). Federal law provides that unions are to be the exclusive bargaining representatives for workers in union shops and, as such, disfavors attorney involvement in grievance resolution. *Id.* at 1484. *See also, Handley v. Phillips,* 715 F.Supp. 657, 667 n. 6 (M.D.Pa.1989) (Conaboy, C.J.).

Plaintiffs do not contest the authority noted. However, they offer two arguments. First, they assert that, while there is no *right* to counsel, there are proceedings in which seeking the advice of counsel is prudent. *See Castelli, supra,* at 1484. Certainly, this is true. However, merely noting that there are times when the services of a lawyer would be helpful falls far short of demonstrating that the Union's decision to handle the grievances alone amounted to a breach of the duty of fair representation. As we have noted, and Plaintiffs have acknowledged, mere negligence or incompetence of union representatives is insufficient for making out a hybrid § 301 case. Plaintiffs' second argument relies on dictum from a concurrence in *Castelli.* Judge Warren Ferguson noted that one factor a union must consider in deciding whether to involve counsel is the nature of the proceeding and whether representation by a layperson might constitute the unlicensed practice of law. 752 F.2d at 1484 (Ferguson, J., concurring). From this, Plaintiffs conclude that Mr. Pozza practiced law illegally when he represented the union himself in the arbitration. This argument is unavailing. It is common and, indeed, preferable for union representatives to conduct arbitrations. Plaintiffs assert that the arbitration included presentation of evidence and cross-examination of witnesses and, so, constituted the practice of law. Were this so, it would establish a *per se* rule that unions must almost always retain counsel for arbitrations, given that virtually all arbitrations involve these indicia of adversary proceedings. There is no *per se* rule, a point recognized by the *Castelli* majority.

---

2. Plaintiffs argue that Mr. Pozza misunderstood the critical issue in the arbitration. He allegedly believed the appropriate argument was that past overtime payments served as a guarantee of future payment. Plaintiffs, on the other hand, believed the crucial argument was that subcontracting had eroded work opportunities such that the promise of 44– or 45–hour work weeks was rendered meaningless. *See* Plaintiffs' Brief in Opposition at 4.

Accepting the undisputed facts in the light most favorable to Plaintiffs, we conclude as a matter of law that the Union did not breach its duty of fair representation when it refused to allow counsel at arbitration.

■ Plaintiffs' second argument is that Mr. Pozza ignored their entreaty that he concentrate on the subcontracting issue at the arbitration, and that his action was more than mere negligence. They cite *Peters v. Burlington Northern Railroad Co.*, 931 F.2d 534 (9th Cir.1991), in which the court determined that when a union "inexplicably ignores a strong substantive argument that must be advanced in order for the employee to prevail on the merits of his grievance, the egregious nature of its failure transcends mere negligence." *Id.* at 539.

Even if we were to agree that ignoring the subcontracting argument amounted to a breach of the duty of fair representation, reference to the record indicates clearly that Mr. Pozza did not ignore Plaintiffs' argument. Mr. Pozza's notes made in preparation for the arbitration include repeated references to the idea that the lack of work was the result of subcontracting. *See* Exh. G to Plaintiffs' Brief in Opposition.[3] After the arbitration, Mr. Pozza submitted a brief to the hearing officer in which he again referred to the subcontracting issue. *See* Exh. H to Plaintiffs' Brief in Opposition.[4] Plaintiffs argue that (1) Mr. Pozza failed to make an appropriate argument about subcontracting and (2) his post-arbitration brief was woefully inadequate as it was only three-pages long and included no legal citations. Assuming, *arguendo*, that these contentions are true, they suggest negligence and ineptitude rather than bad faith. *See Vaca, supra.* Plaintiffs' argument is not that Mr. Pozza ignored the subcontracting issue, it is that he chose not to make the argument they advocated; he addressed the effect of subcontracting on bargaining-unit work, but not in the way Plaintiffs thought he should.[5] Finally, the arbitrator's opinion discusses the interplay of subcontracting with the reduction in overtime and, therefore, there is no question the issue was at least raised. *See* Exh. H to the Complaint.

In summary, Plaintiffs challenge Mr. Pozza's strategy for arbitrating their grievance. Mere disagreement about strategy does not form a foundation for a § 301 lawsuit; if it did, such lawsuits would arise virtually every time a union acts. When employees are aggrieved by their union's good-faith handling of grievances, their resort should ordinarily be to the ballot box rather than to federal court. Thus, even if we resolve all factual disputes in favor of Plaintiffs, we must conclude that they have failed to demonstrate that the Union's conduct "is so far

**3.** Mr. Pozza wrote:

> The Union will further show that the company has since their August 20, 1991 notice, subcontracted additional bargaining unit work to avoid the obligation to the union and the labor agreement.

Plaintiffs argue, however, that this sentence epitomizes Mr. Pozza's ignorance of the relevant issue. They argue that the subcontracting had occurred for years and had only recently begun to encroach upon union overtime. Interestingly, this argument runs counter to an averment of the complaint.

> In or about 1991 and 1992, Defendant Company commenced a practice of utilizing subcontractors and/or supervisorial employees to perform bargaining unit work for Defendant Company. This practice adversely affected Plaintiffs, and each of them, as members of the bargaining unit, by reducing the amount of work available to them ...

Complaint at ¶ 37. Thus, while arguing that Mr. Pozza misunderstood the issue, Plaintiffs echo his contention in their complaint.

**4.** He wrote:

> The Company has claimed hardship on one hand and sub-contracted out work on the other hand. In essence, what the Company is claiming is they have the right to circumvent the Labor Agreement by (1) sub-contracting out work, thus reducing the hours worked by bargaining unit employees.

**5.** For example, Plaintiff Palmer Price, when asked in deposition in what respect he believed Mr. Pozza had failed, testified

> Well, I think Mr. Pozza should have been prepared to talk about subcontracting, since he knowed that it was tied to our work ... But if he could prove to the arbitrator that they just took our work and subcontracted it out, then I feel we would have won the case.

Deposition of Palmer Price at 175. The argument to which Mr. Price refers is precisely that made by Mr. Pozza.

We note as well York Water's undisputed claim that the issue of the subcontracting grievances were separated out from the reduction-in-hours grievances and set to be resolved at a *separate* hearing. *See* York Water's Statement of Undisputed Facts ¶ 61 (admitted by Plaintiffs).

outside a 'wide range of reasonableness' as to be irrational or arbitrary." *Painter, supra.*

### D. *Company Breach of Collective Bargaining Agreement*

■ Having found, as a matter of law, that Plaintiffs have not sustained their burden with regard to the § 301 claim, this hybrid § 301 claim must fail. We will, however, address the claim that the Union violated the collective bargaining agreement.

Plaintiffs admit, as they must, that the labor agreement does not forbid subcontracting. Rather, they argue that a party to a contract has a duty to do that which is necessary to achieve the purpose of the contract. From this, Plaintiffs argue that, by increasing the amount of work it subcontracted, York Water effectively rendered the promise to allow 44– and 45–hour work weeks "as long as work is available" meaningless. We do not agree. In its statement of undisputed material facts, Defendant York Water contends that

76. The Union proposed restrictions on York Water's ability to utilize subcontractors during collective-bargaining negotiations held in 1973, 1979, and 1991.

77. York Water declined to agree to any such proposal.

78. None of the subcontracting restrictions proposed by the Union ever were agreed to or made a part of the [collective bargaining agreement].

*See also,* Price Depo. at 197. In their response to York Water's statement of undisputed material facts, Plaintiffs admit each of the foregoing statements. Thus, Plaintiffs' argument that a "non-subcontracting" clause must be implied does not follow; a court may not imply a term that the parties discussed but did not memorialize in the ultimate contract. Plaintiffs contend, with no viable support in the record, that the contract language allowing overtime "as long as work is available" was the result of "a compromise forged many years before, ..." *See* Plaintiffs' Response to York Water's Statement of Undisputed Material Facts at ¶ 94.[6] A conclusory statement, unsupported in the record, does not demonstrate that there is a material is-

sue in dispute. *See Matsushita Electric, supra.* We must conclude that Plaintiffs have failed to meet their burden of demonstrating that there remains a material issue of fact with regard to whether York Water violated the collective bargaining agreement.

### III. *Conclusion*

As we have noted, Plaintiffs bear the burden of proving that York Water violated the collective bargaining agreement and that the Union violated its duty of fair representation. We find that, as a matter of law, plaintiffs have not met this burden in either respect.

We will issue an appropriate order.

### ORDER AND JUDGMENT

AND NOW, this 27th day of January, 1994, upon consideration of the motions for summary judgment of Defendants United Steelworkers of America, District 7, Local Union No. 2378–B, and the York Water Company, it is ordered that:

1. The motions are granted and judgment is entered in favor Defendants and against Plaintiffs.

2. The Clerk of Court shall close this file.

---

6. Actually, Plaintiffs refer to a page in Mr. Price's deposition transcript that has nothing to do with

any compromise over the contract language. *See* Price Depo. at 175.