Dawn VAVRO,

v.

**GEMINI FOOD MARKETS, INC., t/a Shop Rite and Wakefern Food Corp., t/a Shop Rite and United Food & Commercial Workers Local 1776.**

No. Civ.A. 97–7579.

United States District Court,
E.D. Pennsylvania.

Jan. 27, 1999.

Robert Glazer, Martricia McLaughlin, McLaughlin & Glazer, Easton, PA, for plaintiff.

Robert Simmons, Anthony S. Fiergang, Fiergang & Simmons, P.C., Fort Washington, PA, Nancy B.G. Lassen, Willig, Williams & Davidson, Philadelphia, PA, for defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Defendants, Gemini Food Markets, Inc. and Wakefern Food Corp., both doing business as Shop Rite and the United Food & Commercial Workers Local 1776, now move for the entry of summary judgment in their favor as a matter of law on all of the plaintiff's claims against them in this "hybrid" action brought under the Labor Management Relations Act, 29 U.S.C. § 185. For the reasons which follow, Defendants' motions shall be granted.

### Factual Background

On November 11, 1996, the plaintiff Dawn Vavro was notified that she was being transferred out of her position as scanning coordinator at the Bethlehem, PA Shop Rite and placed into the position of cashier. Ms. Vavro, who began working for Shop Rite in 1971, had held her scanning coordinator position for approximately eight years prior to her demotion. Plaintiff filed a grievance through her union representative and, after undergoing some re-training for the cashier's position with one of the senior cashiers in the Bethlehem store and with the scanning coordinator at the Shop Rite store in Whitehall, PA., she was returned to her job as scanning coordinator in Bethlehem some two weeks later.

Prior to her re-training at the Whitehall Shop Rite, Plaintiff had not previously electronically scanned "Price Plus" tags in the Bethlehem store. Following her re-training and since she had been directed by the stores' owner to follow the same procedures in Bethlehem as they followed in Whitehall, Ms. Vavro began electronically scanning price plus tags before the Bethlehem store opened on Sunday mornings to check for accuracy. In so doing,

the "Catalina Coupon" machine attached to the register used for scanning would generate a number of Catalina coupons.[1]

On December 23, 1996, Ms. Vavro used some $9.00 worth of the catalina coupons generated during a Sunday morning test scan in purchasing items for herself. On December 27, 1996, Plaintiff was terminated for violating the store's catalina coupon policy which essentially treated employees who used catalina coupons not generated through their own orders as having stolen property from the store. Plaintiff filed another grievance through the defendant union. Jim Hunt, the plaintiff's union representative, investigated the circumstances underlying plaintiff's termination, interviewed other store employees who plaintiff alleged had also violated and/or knew of other violations of the catalina coupon policy and reviewed the matter with the union's in-house counsel. The union eventually decided that the grievance should not proceed to arbitration as it would have little, if any, chance of success. Plaintiff was notified of the union's decision in writing from both Representative Hunt and Local President Wendall Young, via letters dated July 21, 1997 and September 4, 1997, respectively. Although Mr. Young's letter advised Ms. Vavro that she could appeal the Local's decision to the Executive Board, no such appeal was ever filed. Plaintiff instead filed this "hybrid" action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 against her former employer for terminating her in violation of the Collective Bargaining Agreement which it had with Local 1776 and against the union itself for its alleged breach of its duty to fairly represent her. Defendants now move for the entry of summary judgment in their favor on all of the claims set forth against them in the plaintiff's complaint.

---

1. "Catalina" coupons are the red and white coupons which are generated at the point of purchase and printed along with a customer's grocery receipt offering discounts on future purchases. Under the 1997 IBM 4690 Cashier's Training Manual, all catalina coupons are to be given to the customer whose order generated them. Any catalina coupons which a customer does not want or does not take are to be destroyed and no catalina coupons are to be taken by an employee unless they are generated by that employee's own order.

## Summary Judgment Standards

The standards for determining whether summary judgment is properly entered in cases pending before the district courts are governed by Fed.R.Civ.P. 56. Subsection (c) of that rule states, in pertinent part,

... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

In this way, a motion for summary judgment requires the court to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). *See Also: Aries Realty, Inc. v. AGS Columbia Associates,* 751 F.Supp. 444 (S.D.N.Y.1990).

As a general rule, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the party

opposing the motion and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital,* 760 F.Supp. 1120 (E.D.Pa.1991); *Schillachi v. Flying Dutchman Motorcycle Club,* 751 F.Supp. 1169 (E.D.Pa.1990).

When, however, "a motion for summary judgment is made and supported [by affidavits or otherwise], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate may be entered against [it]." Fed.R.Civ.P. 56(e).

A material fact has been defined as one which might affect the outcome of the suit under relevant substantive law. *Boykin v. Bloomsburg University of Pennsylvania,* 893 F.Supp. 378, 393 (M.D.Pa.1995) citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.,* citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### Discussion

#### 1. *Propriety of Plaintiff's Discharge*

■ Defendants move for the entry of judgment in their favor as a matter of law on the grounds that there is no evidence that Plaintiff was terminated in violation of the Collective Bargaining Agreement or that the union breached its duty of fair representation and because Plaintiff's lawsuit is barred due to her failure to exhaust her available internal union remedies and to file suit within the limitations period.

Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), provides that:

"[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

*See Also: Local Union No. 1075, United Rubber, Cork, Linoleum and Plastic Workers of America, AFL—CIO v. United Rubber, Cork, Linoleum and Plastic Workers of America, AFL—CIO,* 716 F.2d 182, 184 (3rd Cir.1983).

Under this section, an employee who proves that his employer violated the labor agreement and his union breached its duty of fair representation, may be entitled to recover damages from both the union and the employer. *Bowen v. United States Postal Service,* 459 U.S. 212, 218, 103 S.Ct. 588, 593, 74 L.Ed.2d 402 (1983); *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Such suits, where an employee brings concurrent causes of action against a union and an employer, are otherwise known as "hybrid" lawsuits and can encompass those seeking to vindicate "uniquely personal" rights of employees such as wages, hours, overtime pay and wrongful discharge. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164–165, 103 S.Ct. 2281, 2290–2291, 76 L.Ed.2d 476 (1983); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 561, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Downey v. United Food and Commercial Workers Union Local 1262,* 946 F.Supp. 1141, 1152 (D.N.J.1996).

In this case, the gravamen of plaintiff's complaint appears to be that because other employees used catalina coupons in violation of and otherwise violated Shop Rite's anti-theft policy but were not terminated, her termination violated the collective bargaining agreement in that it was the result of disparate treatment. Plaintiff further avers that she was never apprised of the store's catalina coupon policy in either her initial training or in any of the re-training she received in November, 1996.

In this regard and in addition to plaintiff's own testimony, both Charles Trimpey, the Bethlehem store manager and Mary Ellen Rudolph, a cashier at the Bethlehem store, testified that it was not uncommon to see catalina coupons lying around the store's aisles and floors and that it would not have been improper for an employee to pick such coupons up and use them themselves. (See Affidavit of Mary Ellen Rudolph attached to Plaintiff's Response to Motion for Summary Judgment as Exhibit "B"; Deposition of Charles Trimpey, pp. 45–47, annexed to Defendant Union's Motion for Summary Judgment as Exhibit 23). Given that Article 11 of the Collective Bargaining Agreement provides that the employer has the right to discharge any employee for "good and sufficient cause," we find that this evidence raises a genuine issue of material fact as to whether such "good and sufficient cause" existed to justify plaintiff's termination. Accordingly, we must examine whether Ms. Vavro in fact failed to exhaust her union remedies and acted in a timely fashion and whether the union breached its duty to fairly represent her.

### 2. *Bar of Limitations Period*

The law is clear that a hybrid suit against an employer must be brought within the six month statute of limitations established by § 10(b) of the LMRA, 29 U.S.C. § 160(b). *DelCostello,* 462 U.S. at 155, 103 S.Ct. at 2285–2286; *Whittle v. Local 641, International Brotherhood of Teamsters,* 56 F.3d 487, 489 (3rd Cir.1995); *Downey,* 946 F.Supp. at 1152. For limitation of actions, a cause accrues when it is sufficiently ripe that one can maintain suit on it. Under Third Circuit precedent, a limitations period begins to run when a plaintiff knows, or reasonably should have known, of the acts constituting the union's wrongdoing. *Downey,* at 1152–1153 citing, *inter alia, Clayton v. International Union,*

*United Auto., Aerospace, and Agric. Implement Workers of America,* 451 U.S. 679, 689–93, 101 S.Ct. 2088, 2095–98, 68 L.Ed.2d 538 (1981), *Miklavic v. USAir, Inc.,* 21 F.3d 551, 556 (3rd Cir.1994).

Applying these principles to this action, Defendants aver that Ms. Vavro knew or reasonably should have known that the union had determined to not pursue her grievance to arbitration by May 3, 1997 when, some three days after learning in a telephone conversation with Union Representative Hunt that the union's in-house counsel did not recommend arbitration, she sent a letter to the UFCW International Union regarding the status of her grievance and expressed her concern that her discharge would not be arbitrated. Not surprisingly, Plaintiff disputes this and contends that her cause of action did not begin to accrue until July 21, 1997 when she received a certified letter from Jim Hunt that served to "officially inform" her that the union was withdrawing her case from the grievance procedure. Giving the plaintiff the benefit of the doubt as we must at the summary judgment stage, we shall accept her argument for purposes of this motion and hold that her action is not barred in light of the fact that it was filed on December 15, 1997.[2]

### 3. *Exhaustion of Union Remedies*

The Courts have long required that an employee seeking a remedy for an alleged breach of the collective agreement between his union and his employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain against his union or employer under § 301(a) of the LMRA.
*Clayton,* 451 U.S. at 681, 101 S.Ct. at 2091, citing, *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965) and *Hines v. Anchor*

---

**2.** In addition, it may not have been until she received Local President Wendell Young's letter of September 4, 1997, that Plaintiff learned that she could appeal the Local's decision to not further pursue her grievance to the Executive Board. We shall therefore give Plaintiff further deference on this basis, as well.

*Motor Freight, Inc.,* and *Vaca v. Sipes,* both *supra.*

There are, however, exceptions to the exhaustion requirement. Where an internal union appeals procedure cannot result in reactivation of the employee's grievance or an award of the complete relief sought in his or her § 301 suit, exhaustion will not be required with respect to either the suit against the employer or the suit against the union. *Clayton,* 451 U.S. at 685, 101 S.Ct. at 2093. In applying these standards, the courts have discretion to decide whether to require exhaustion of internal union procedures. *Local Union No. 1075, supra.,* 716 F.2d at 185. In exercising this discretion, the courts should consider at least the following three factors and thus exhaustion will not be required where (1) union officials are so hostile to the employee that the employee could not hope to obtain a fair hearing on the claim; (2) the internal union procedures would be inadequate to either reactivate the employee's grievance or to award the employee the full relief sought under § 301 of the LMRA or (3) the exhaustion of internal procedures would be an unreasonable delay of the employee's opportunity to obtain a judicial hearing on the merits. *Id., citing Clayton,* at 689, 101 S.Ct. at 2095; *Downey,* 946 F.Supp. at 1154.

What's more, to prove a claim against a union for breach of the duty of fair representation, a plaintiff must demonstrate that the union's actions are either arbitrary, discriminatory or in bad faith. *Air Line Pilots Association International v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991); *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. *Air Line Pilots Ass'n,* 111 S.Ct. at 1130. The conduct of a union official in handling grievances is not deemed arbitrary or perfunctory when it is merely inept or negligent nor does mere disagreement about strategy form a foundation for a § 301 lawsuit. *Johnson v. United Steelworkers of America, District 7 Local Union No. 2378–B,* 843 F.Supp. 944, 946, 948 (M.D.Pa.1994). When an employee's underlying contract claim lacks merit as a matter of law, the employee cannot complain that the union breached its duty of fair representation in failing to process the grievance inasmuch as an employee suffers no injury when a union fails to go forward with a meritless claim. *Souter v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local 72,* 993 F.2d 595, 598 (7th Cir.1993). In any event, to prevail in an action under § 301 against either the employer or the union, an employee must ordinarily establish both that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement. *Clayton v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America,* 451 U.S. 679, 683, note 4, 101 S.Ct. 2088, 2092, note 4, 68 L.Ed.2d 538 (1981) citing *Hines v. Anchor Motor Freight, Inc., supra.* See Also: *United Parcel Service v. Mitchell,* 451 U.S. 56, 62, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981).

In application of all of the foregoing, we note at the outset that the By-Laws of the UFCW Union at Article XV set out the procedure for taking appeals from decisions of the local union regarding the handling of grievances. Specifically, Article XV states:

> *Section A.* The Local Union shall have the exclusive authority to interpret and enforce the collective bargaining contract. In accordance therewith, the Local Union shall have the exclusive authority to submit grievances to arbitration, withdraw grievances, settle and compromise grievances and decline to invoke the grievance procedures of a collective bargaining contract. The President or his or her designated rep-

resentative, shall make the decision as to whether a grievance is to be submitted to arbitration.

*Section B.* Any member who disagrees with the disposition of his or her grievance by the Local Union President, or the President's designated representative, shall have the right to appeal the decision to the Local Union Executive Board. The appeal shall be submitted, in writing, to the office of the Local Union and shall contain a simple statement of the nature of the grievance and any other matter the member wishes to bring to the attention of the Executive Board.

*Section C.* The member shall submit the appeal within 15 days from the date the member is first advised of the Local Union's disposition of the member's grievance.

*Section D.* The Local Union Executive Board shall consider the appeal at the next regular meeting of the Executive Board. The Executive Board shall treat the appeal as either a request for a review or a request for reconsideration.

*Section E.* The Executive Board shall advise the member of its decision within 30 days from the date of the meeting. There shall be no further appeal from the decision of the Executive Board.

*Section F.* Any member who does not appeal the Local Union's disposition of the member's grievance as provided above shall be deemed to have acquiesced in said disposition.

This Article, we find, provides a sufficient method for appeal and timely review of a local union's decision to not pursue a grievance to arbitration and should be followed wherever possible. Consequently, we next consider whether (1) the union officials involved here were so hostile to the plaintiff that she could not have hoped to obtain a fair hearing on her claim; (2) the internal union procedures were inadequate to either reactivate the plaintiff's grievance or to award her the full relief sought under § 301 of the LMRA or (3)

the exhaustion of internal procedures would unreasonably delay the plaintiff's opportunity to obtain a judicial hearing on the merits.

In so doing, we reiterate our finding that while the language of the by-laws does not mandate exhaustion, it does establish a reasonable and adequate process for resolving disputes over whether the grievance should have been pursued further and for potentially affording Plaintiff the relief sought under § 301(a). As to the second element, Plaintiff has provided no evidence that the union officials were hostile to her or her case nor do we find any evidence that Plaintiff was treated unfairly or unjustly by any of the union's representatives. To the contrary, we find that Plaintiff's case was thoroughly investigated, considered and re-considered by Representative Hunt, In–House Counsel, Dinorah Matos–Manon, Esquire and Wendell Young, the Local President in response to each of Plaintiff's inquiries and requests. That the investigation and evaluation process took some nine months is attributable to the fact that each time plaintiff gave Representative Hunt additional information, he re-investigated and re-consulted with the local's in-house counsel.

Third, we can find no evidence that the appeals process outlined in the union's by-laws would unreasonably delay the plaintiff's opportunity to obtain a judicial hearing on the merits. To be sure, under this procedure, an appeal to the Executive Board is to be filed within fifteen (15) days of the date on which the Local renders its decision and the Executive Board is expected to issue its decision either upholding or reversing that decision within thirty (30) days. A period of forty-five days does not constitute an unreasonable length of time to require a potential litigant to wait before filing suit, particularly in light of the fact that the Executive Board is to hear the appeal at the next meeting scheduled following the appeal's filing. Accordingly, in the exercise of our discretion, we

conclude that the plaintiff's failure to pursue her internal union remedies is fatal to this cause of action.

■ Notwithstanding this finding, however, we additionally note that there is no evidence of record that the Local's actions were arbitrary, discriminatory or in bad faith. While Plaintiff argues that arbitrariness and bad faith may be implied from the union's treatment of her case as a "theft" case and from its failure to pursue the matter to arbitration, the union has articulated cogent reasons for its decision. Indeed, Plaintiff does not dispute the union's explanation that, when first questioned by Store Manager Trimpey as to how she came to be in possession of the catalina coupons used, she gave several, vastly different explanations within the span of a few minutes' time. As Representative Hunt testified, Plaintiff's behavior led him to suspect that Plaintiff knew what she was doing and based upon his and Attorney Matos–Manon's investigation and evaluation of Plaintiff's credibility and that of the statements of other Shop Rite employees, they concluded that there was a strong probability that they could not win Plaintiff's grievance at arbitration. (Exhibits 7, 22, pp. 37–48). Although Ms. Vavro may not agree with this conclusion, again, a union's actions will be deemed arbitrary only if, in light of the factual and legal landscape at the time taken, the union's behavior is so far outside a wide range of reasonableness as to be irrational; mere disagreement about strategy does not form a foundation for a § 301 lawsuit. *See: Air Line Pilots Ass'n,* 111 S.Ct. at 1130; *Johnson v. United Steelworkers of America, District 7 Local Union No. 2378–B,* 843 F.Supp. at 946, 948. Inasmuch as the union's decision was premised upon sound, legitimate reasons and there is no evidence that the union discriminated against the plaintiff, we do not find its decision to not pursue the grievance further to be arbitrary, discriminatory or in bad faith. Plaintiff's claim that the union breached its duty of fair representation

necessarily fails, as must her claim against the employer entities.

For these reasons, Defendants' motions for summary judgment are granted in accordance with the attached order.

### ORDER

AND NOW, this 27th day of January, 1999, upon consideration of the Motions for Summary Judgment of Defendants Gemini Food Markets, Inc. and Wakefern Food Corp., both trading as Shop Rite and the United Food & Commercial Workers Local 1776 and Plaintiff's Responses thereto, it is hereby ORDERED that the Motions are GRANTED and judgment is entered in favor of all of the defendants and against the plaintiff for the reasons set forth in the preceding Memorandum Opinion.