Patrick SOUTER and Hope Souter,
Plaintiffs–Appellants,

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 72, et al., Defendants–Appellees.

No. 92–2640.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1993.

Decided May 11, 1993.

Walter Stern, Union Grove, WI (argued), for plaintiffs-appellants.

George Graf (argued), Gillick, Murphy, Wicht & Prachthauser, Brookfield, WI, for International Union, United Automobile, Aerospace and Agr. Implement Workers of America, Local 72 and International Union of United Auto., Aerospace and Agr. Implement Workers of America, U.A.W.

Peter J. Stone (argued), Laura A. Brenner, Foley & Lardner, Milwaukee, WI, for Chrysler Corp. and Jeep Eagle Corp.

Before POSNER, FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Patrick and Hope Souter bring this appeal from an entry of summary judgment in favor of the United Automobile, Aerospace, and Agricultural Implement Workers of America and its local branch (collectively

referred to as "the union") and Chrysler Corporation. The underlying suit was a hybrid action brought under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, against Patrick Souter's employer, Chrysler, and his union representative. The plaintiffs charged that Chrysler had violated the terms of a collective bargaining agreement by failing to honor Patrick Souter's "transfer rights," and that the union had breached its duty of fair representation by failing to represent Souter in the grievance process. Because we believe that Patrick Souter was not entitled to any relief under the collective bargaining agreement, we affirm the entry of summary judgment.[1]

Patrick Souter began working for American Motors Corporation in August of 1987 as an apprentice pipefitter at the Kenosha Engine Plant. Chrysler purchased American Motors in 1988, and Chrysler has been Souter's employer since then. On January 27, 1988, Chrysler announced that it planned to close the Kenosha Assembly and Stamping Plants, but that it would leave open the Kenosha Engine Plant. As a result of these closings, many employees at the Kenosha plants faced layoffs. The union and Chrysler reached an agreement to create a program to transfer qualified apprentices to other Chrysler plants throughout the country. Under the program, the apprentices were to be divided into two classes. "Temporary" apprentices were eligible for transfers, based on their performance on an employment test, while "permanent" apprentices were eligible for the positions that would remain at Kenosha, based on their seniority. According to the agreement, whether an apprentice qualified as "temporary" or "permanent" depended on his or her likelihood of being "laid off with no prospect for return to the program at Kenosha." Rusk Dep. Ex. 7.

Chrysler predicted that one pipefitter apprentice would be retained as an employee for every eight journeymen. Souter was ranked third in seniority among the apprentices, and Chrysler expected to keep twenty-four journeymen at Kenosha. Chrysler therefore classified Souter as a permanent employee likely to retain a position at Kenosha.

The purpose of this plan was presumably to protect the jobs of the more senior apprentices by giving them positions at Kenosha, and to award transfers to the more junior apprentices according to their test scores. In some cases, however, the permanent jobs unexpectedly turned out to be less secure than the temporary ones. In March of 1989, two temporary apprentices named Greg Wing and Gail Klebig were transferred to a Chrysler plant in Detroit, Michigan. Souter had scored higher than Klebig on the employment test that determined one's rank as a temporary employee, but Souter was already classified as a permanent employee. He therefore remained at Kenosha. After Klebig's transfer, Souter allegedly consulted officials of the union, including Curt Wilson, the recording secretary for the local union, about filing a grievance concerning his classification. Souter claims Wilson stated that he would investigate Souter's claim, but in fact never filed a grievance.

On September 1, 1989, Souter was told that he would be laid off from the Kenosha Engine Plant effective September 3. He then filed a grievance with the union based on two complaints: first, that an apprentice with less seniority and lower test scores received a transfer to Detroit; second, that he was being improperly laid off because more than twenty-four journeymen were working but only two apprentices. During the next few months, Souter worked on and off at Kenosha. In August of 1990, the union and

---

1. Hope Souter is Patrick Souter's wife. She has never been employed by Chrysler nor represented by the union. In their complaint, the plaintiffs stated that Hope Souter's claims "are derivative of the claims of Patrick Souter by virtue of her marital property interest in her husband's past and future wage loss." Complaint at 1. The district court questioned whether Hope Souter had standing to sue, but made no ruling either way. We believe Hope Souter has no standing to claim breach of the duty of fair representation, since she was not a member of the collective bargaining unit. We also believe she has no standing to sue Chrysler, since she was never an employee nor a third-party beneficiary of the collective bargaining agreement. *See Karo v. San Diego Symphony Orchestra Ass'n,* 762 F.2d 819, 821–24 (9th Cir.1985). Accordingly, we dismiss her appeal.

Chrysler settled Souter's September grievance, reinstating him and awarding backpay, overtime pay, and holiday pay on his improper layoff claim. Souter insisted, nevertheless, that he was entitled either to a guaranteed job or to the right to "bump" another apprentice in Detroit.

In Souter's lawsuit against Chrysler and the union, the district court held that the union reasonably believed Souter's claim to be without merit, because he clearly was not entitled to a transfer or to any further remedies under the terms of the collective bargaining agreement. It therefore granted summary judgment to the defendants. We review this decision by the familiar standard of whether all the pleadings and supporting documents show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Heck v. City of Freeport,* 985 F.2d 305, 307 (7th Cir.1993); Fed. R.Civ.P. 56(c).

 To prevail on his claim, Souter needed to demonstrate that the union's actions were arbitrary, discriminatory, or taken in bad faith. *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, ——, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991); *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). We applied this standard in *Ooley v. Schwitzer Div., Household Mfg.,* 961 F.2d 1293, 1302–04 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 208, 121 L.Ed.2d 148 (1992), to the issue of a union's duty of fair representation in the grievance process. We ruled that when an employee's underlying contract claim lacks merit as a matter of law, the employee cannot complain that the union breached its duty of fair representation in failing to process the grievance. *See id.,* 961 F.2d at 1304. The em-

ployee suffers no injury when the union fails to go forward with a meritless claim. *See id.*

 In this case, summary judgment for the union was properly granted. On the first part of Souter's grievance, in which he alleged that his September 1988 layoff was improper, Souter was entitled to no relief from the union because he *won* that dispute with Chrysler. The union properly represented him, and he prevailed. On the second part of Souter's grievance, in which he alleged that he deserved a permanent job at Kenosha or a preferential transfer, he was entitled to no relief because the claim is completely without merit. From Souter's personal standpoint, he may wish that he had been classified as a temporary employee rather than as a permanent one, since he thought a transfer to Detroit was more desirable than remaining at Kenosha. But failure to honor an employee's subjective preferences is not the test of whether the collective bargaining agreement was breached. At the time the transfer program was implemented, it appeared that Souter would retain his job at Kenosha, given the number of journeymen projected to stay. Gail Klebig, by contrast, had less seniority and a greater likelihood of being "laid off with no prospect for return" to Kenosha. Klebig was therefore transferred to Detroit. The layoff that occurred in September was indeed improper, but Souter received a reinstatement and full recompense for that action. He has not shown that he is entitled to more.[2]

 To prove the existence of union hostility toward him, Souter submitted his own affidavit in opposition to the motion for summary judgment. In it, he alleges that Curt Wilson, the union representative who handled the investigation and processing of his grievance, made certain negative comments

2. Souter's real complaint may be that the union breached its duty of fair representation not in the administration of the collective bargaining agreement, but in its original negotiation. For example, he may feel that more senior apprentices should have been entitled to choose whether they wanted to remain at Kenosha or be transferred elsewhere (assuming they passed the employment test). Unfortunately, Souter did not make

this argument before the district court or on appeal. Even if he had, it would have been quite difficult, if not impossible, to show that the collective bargaining agreement was arbitrary, discriminatory, or made in bad faith. *See Rakestraw v. United Airlines, Inc.,* 981 F.2d 1524, 1529–37 (7th Cir.1992). As far as the record reveals, the program worked successfully for many Chrysler apprentices.

about his claim.[3] The district court believed these comments showed only that the union questioned the merit of Souter's grievance, not that it treated Souter with hostility or in bad faith. We agree. As we have stated above, the union's view of Souter's claim to transfer rights was accurate; it did lack merit. It also bears repeating that the union properly represented Souter in the pursuit of his grievance based on the improper layoff. In fact, the union's willingness to pursue Souter's meritorious claim·tends to show that it bore no ill will toward him.

■ Souter also charges that a racist atmosphere pervaded the Kenosha plant and contributed to hostile attitudes on the part of the union. In his affidavit, Souter pointed out that he was the only black apprentice out of twenty-five who worked at the plant, and that some employees nevertheless derisively called the plant "African Motors." He also submitted photographs taken from locker rooms in the plant that depicted racial slurs on the walls and "jokes" directed against blacks. Without doubt, the slurs that appear in the photographs are repugnant. But Souter offered no evidence linking this graffiti to his treatment by the union, which he must do to show a breach of the union's duty of fair representation. *See Reed v. International Union of UAW*, 945 F.2d 198, 203 (7th Cir.1991) (wrongful conduct will not be imputed to union defendants unless plaintiffs establish that union instigated, supported, ratified, or encouraged the conduct).

After the district court's decision, Souter brought a motion to amend or alter the judgment pursuant to Federal Rule of Civil Procedure 59(e), which authorizes relief when a moving party "clearly establish[es] either a manifest error of law or fact" or "present[s] newly discovered evidence." *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986). Souter contended that the entry of summary judgment should be vacated in light of information revealed through the deposition of Ann Morrill, the apprentice coordinator for Chrysler, which was taken before judgment was entered but after evidence was closed for summary judgment pur-

poses. Souter interpreted Morrill's testimony to mean that Souter was originally scheduled to be "deactivated" from the Kenosha plant (that is, classified as a temporary employee), but was instead recalled. Souter argued that this evidence raised a genuine issue of material fact as to the reasonableness of the union's view that Souter was properly classified as a permanent employee.

■ The district court held that this evidence should have been presented in a motion to supplement Souter's opposition to summary judgment, not in a motion to amend. Even if the evidence had been taken into consideration, the district court found, it would not defeat the union's motion for summary judgment. We review the denial of a Rule 59(e) motion only for an abuse of discretion, *see Billups v. Methodist Hosp.*, 922 F.2d 1300, 1305 (7th Cir.1991), and we find none here. Morrill's testimony about the administration of the transfer program was confused, and she readily admitted her ignorance about higher corporate and union decisions that involved Souter and the other apprentices. Even if Souter was briefly classified as a temporary employee, his eventual classification was proper, since he was not expected to be laid off with no prospect for return to Kenosha.

■ Finally, the district court correctly noted that an action against an employer under section 301 of the LMRA will not succeed unless the employee demonstrates that the union breached its duty of fair representation. *See United Parcel Serv. v. Mitchell*, 451 U.S. 56, 62, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981); *Reed*, 945 F.2d at 204. Souter failed to prove his claim against the union; hence, he cannot win his claim against Chrysler.

For the foregoing reasons, Hope Souter's appeal is DISMISSED. The judgment of the district court is in all other respects AFFIRMED.

---

**3.** Souter alleges that Wilson said: "[Y]ou have no recourse," "you want to live in the best of both worlds," "you don't deserve any special privilege," "they are not going to take that guy off the job in Detroit just because you say it's yours," and "I don't have anything to do with any special deals you and [another employee] cook up."