Robert TRNKA, Plaintiff–Appellant,

v.

LOCAL UNION NO. 688, UNITED AUTO-
MOBILE, AEROSPACE & AGRICUL-
TURE IMPLEMENT WORKERS OF
AMERICA and International Union,
United Automobile, Aerospace & Agri-
culture Implement Workers of America,
Defendants–Appellees.

No. 93–3270.

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1994.

Decided July 6, 1994.

Rehearing Denied Sept. 7, 1994.

Daniel F. Webb (argued), Chicago, IL, for plaintiff-appellant.

Michael B. Erp (argued), Harold A. Katz, Katz, Friedman, Schur & Eagle, Chicago, IL, for defendants-appellees.

Before BAUER, FLAUM and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Robert Trnka sued his union, alleging that it violated the duty of fair representation owed to him when it declined to continue to pursue his objection to being laid off by his employer, Dresser Industries. Trnka asserts that the union abbreviated its support for his grievance in retaliation for criticisms of the union and its local leadership that he had previously voiced. The district court dismissed the suit because Trnka failed to provide any evidence in support of his allegation of bad faith or arbitrariness on the union's part. Because it concluded that the union's decision to drop the grievance was supported by a reasonable reading of the labor contract in question, the court found Trnka's unsupported assertion that the union was motivated by his criticisms from long before insufficient to fend off summary judgment. We agree with the district court and affirm its judgment.

Trnka was laid off by Dresser in 1987 when he lost his "superseniority" status which, under the collective bargaining agreement, had protected him from layoff by overriding his normal seniority level, ordinarily determinative for layoff order. Superseniority is afforded to employees who hold certain union positions—Trnka was Night Shift Committeeman from 1985 until 1987 when his term ended and he lost a union election. Trnka was replaced at Dresser by a previously laid off worker of greater natural seniority. Trnka then filed a number of grievances with Dresser, in each asserting that his layoff violated various terms of the collective bargaining agreements between the union and Dresser. The union pursued his complaints through several stages of the grievance process but eventually withdrew them because, it claimed, they lacked merit.

■ To prevail on a claim that his union violated its duty of representation by dropping a grievance, a plaintiff-member must show that the union's decision was arbitrary or based on discriminatory or bad faith motives. *See Ooley v. Schwitzer Div., Household Mfg. Inc.,* 961 F.2d 1293, 1302 (7th Cir.),

*cert. denied* —— U.S. ——, 113 S.Ct. 208, 121 L.Ed.2d 148 (1992) (citing *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 70–78, 111 S.Ct. 1127, 1132–35, 113 L.Ed.2d 51 (1991)). To avoid summary judgment on the claim he must proffer evidence sufficient to support such a showing. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The district court concluded that Trnka did not satisfy this burden. We evaluate the matter afresh. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Trnka first asserts that there is sufficient evidence to support a conclusion that the union's decision to abandon his grievance was arbitrary. We have noted that the test for arbitrariness in fair representation claims is quite forgiving:

> This wide degree of deference is warranted because Congress did not intend courts to interfere with the decisions of the employee's chosen bargaining representative. As such, a union only violates the arbitrary prong of the analysis when the union's actions are so far outside a wide range of reasonableness that the actions rise to the level of irrational or arbitrary conduct. Under this extremely deferential standard, courts should not substitute their judgment for that of the union, even if, with the benefit of hindsight, it appears that union could have made a better call.

*Ooley,* 961 F.2d at 1302 (internal quotations and citations omitted). Obviously then, so long as a colorable argument could be made at the time of the union's decision to drop its support that the grievance is meritless (and the union did not then treat substantively similar grievances differently from the plaintiff's), the decision cannot be regarded as arbitrary. Therefore, (as he did not attempt to establish comparative arbitrariness) Trnka's burden on summary judgment is not merely to demonstrate that his favored reading of the labor contract is as plausible as the union's, thus creating an issue of material fact regarding the correct interpretation, but rather to show that the union's reading could eventually be deemed not even colorable,

thus creating an issue of material fact regarding arbitrariness.

▇ Trnka claims his layoff was wrongful because under the Central Agreement (i.e. the overarching agreement between Dresser, the international union and several locals) layoffs are only contemplated during periods of "reduced manpower requirements" and Dresser was not going through such a period when he was laid off, as some previously laid off workers were in fact being recalled at the time. The union responds that it would be anomalous, to say the least, to interpret "reduced manpower requirements" and "reductions in force" (the latter phrase is from the Local Agreement—between Dresser, the International and Local 688—in which layoff procedures are set out in detail) as referring only to those occasions on which the company was actively laying off workers. First, we agree that these phrases, on their own terms, naturally can encompass periods in which some workers remain laid off from earlier cuts but the company is not carrying out additional layoffs. Moreover, to ascribe to them the narrower, moment-to-moment sense that Trnka suggests—that is, to read "reduced" as "reducing"—(and then to conclude that as a result the agreements implicitly limit seniority-based adjustments of the layoff rolls) would mean that so long as the company is currently recalling even just a few workers, even if a substantial portion of its workforce is still laid off, someone who avoided those layoffs because he held superseniority status at the time but who had since returned to normal seniority would nonethe-

less continue on the job while more senior employees would remain on layoff. Trnka did not show the district court either how this odd result could be consonant with the strong seniority themes of the labor agreements in question (or the limited appropriateness of superseniority in general, *see Local 1384, UAW v. N.L.R.B.*, 756 F.2d 482, 488–90 (1985)) or that the language of the agreements was anything more than arguably susceptible to such a surprising interpretation.[1] If this were solely a contract dispute, Trnka's construction may have (barely) been plausible enough to survive summary judgment.[2] But since this is a fair representation suit, Trnka was required to submit evidence sufficient to support a finding that the union's rejection of his interpretation was arbitrary, not just possibly incorrect. This he did not do.

▇ To us, but not to the district court, Trnka also argues that his layoff and the union's decision to cease contesting it were wrongful because some less senior employees were preferred over him when he was laid off. Specifically, Trnka asserts that under the terms of Dresser's sale agreement with International Harvester—Dresser had bought the facility at which Trnka worked from International Harvester—certain employees should not have enjoyed seniority rights at all. As a basis for establishing the arbitrariness of the union's decision not to prosecute Trnka's claim—i.e. the manifest incorrectness of the decision as an assessment of the merits of the grievance at the time it was made—this argument is waived

---

1. Article XI, Section 2 of the Central Agreement states in part:
   Seniority shall be used, in accordance with the terms of this Contract, to determine the order of layoff due to reduced manpower requirements and recall after such layoffs....
   Article I, Section 3(B) of the Local Agreement states:
   Should further reductions in forces be necessary [beyond probationary employees], an employee on the Bargaining Unit Seniority List who is removed from a classification or is displaced by a senior employee will be allowed to displace shortest seniority employee in first the same and then successively lower grades within his or her occupational group, provided he or she has greater Bargaining Unit seniority and is capable of performing the work.
   Section 3(D) continues:

   If an affected employee cannot be placed under the provision of this Article, such employee will be laid off.
   And Section 3(F) provides:
   Laid off employees on the Bargaining Unit Seniority List shall be recalled to open jobs for which they are qualified in the reverse order of layoff....
   Article XI, Section 8 of the Central Agreement discusses preferred seniority and contains no suggestion that its privileges should extend to anyone other than its current holders.

2. Though probably not, as from Trnka's perspective, the contractual language is at best ambiguous, and Trnka offers no extrinsic evidence to support the construction he prefers. *See Ooley*, 961 F.2d at 1298–99.

for failure to present it below in opposition to summary judgment. *See Hayden v. La–Z–Boy Chair Co.,* 9 F.3d 617, 621–22 (7th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1371, 128 L.Ed.2d 47 (1994). That the sales agreement was mentioned in one of the five grievance forms that Trnka originally submitted to the union and which were attached to the Third Amended Complaint filed by Trnka in this action does not preserve the issue when it was not pressed before the district court when faced with the summary judgment motion. The court "may properly depend upon counsel to apprise [it] of the issues for decision" and need not "conduct a search for other issues which may lurk in the pleadings." *Bank–Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 235 (7th Cir.1991).

■ Unfair representation as arbitrariness requires inquiry into the objective adequacy of union action; unfair representation as discrimination or bad faith requires inquiry into the subjective motivation behind union action. *See O'Neill,* 499 U.S. at 74–75, 111 S.Ct. at 1134–35 (quoting *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967)). We turn now to Trnka's allegations of illicit motivation underlying the union's refusal to proceed with his grievance (assuming, for present purpose, that Trnka's proffered interpretations, and hence grievance, are not meritless as a matter of law, *see supra* note 2, so as not to doom at the outset *all* of his claims of unfair representation, *see Ooley,* 961 F.2d at 1304).

■ In the district court, Trnka contended that the union dropped his grievance in retaliation for his past criticisms of union leadership and policies, stretching over almost two decades. He cited no evidence of this supposed retaliation beyond the bare assertions that his criticisms took place. To stave off summary judgment in a case where innocent or multiple explanations for a defendant's actions abound a plaintiff must rely on more than *post hoc, propter hoc* reasoning. Trnka did not, and the district court responded properly. On appeal Trnka seems to recognize as much because, apart from some passing references to animosity between him and the union, he emphasizes another type of bad

faith as prompting the union's termination of his grievance.

Trnka points to union representative Ron Troutman's deposition in which Troutman stated, "I didn't want [Trnka's] grievance granted.... Then we would have a lot more grievances from senior people." Trnka insists that this statement reveals that the union made its decision as to his grievance not based on any judgment as to its merits but in order to avert administrative hassles for the union. We need not decide whether if this were so, it would constitute a bad faith purpose, *cf., e.g., Ooley,* 961 F.2d at 1303 (stating that dropping a grievance thought to have some merit because of a concern that the arbitrator's findings would expose the union to future lawsuits is bad faith decision-making), because, taken in context, Troutman's comments represent no more than a restatement of his repeatedly expressed view that Trnka's grievance was without merit because it was premised on elevating him above coworkers with greater seniority. He would expect grievances from more senior workers because he believed that the more senior workers would be right to feel aggrieved if Trnka got his way. In any event, Trnka did not contest the union's Local Rule 12(m) statements asserting that his grievance was dropped because Troutman and the grievance committee thought that the layoff was correct under the contract; therefore, he did not preserve the issue of improper motive. *See Valenti v. Qualex, Inc.* 970 F.2d 363, 368–69 (7th Cir.1992).

AFFIRMED.