In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1453

SCOTT CUNNINGHAM and ANDREW HOLZMANN,

*Plaintiffs-Appellants*,

*v.*

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 5522 — **James F. Holderman**, *Judge*.

ARGUED SEPTEMBER 22, 2014 — DECIDED OCTOBER 8, 2014

Before WOOD, *Chief Judge*, and EASTERBROOK and SYKES,
*Circuit Judges*.

EASTERBROOK, *Circuit Judge*. After United Air Lines and
Continental Airlines merged, forming a new United Airlines,
they needed to produce unified seniority and longevity ros-
ters for pilots. The process was contentious; any improve-
ment in the position of one carrier's pilots meant a relative
demotion for pilots coming from the other carrier. A single

union, the Air Line Pilots Association, represents all of the pilots and had to work out many contests internally.

In December 2012 United and the Union reached a collective bargaining agreement that sets each pilot's pay based on three principal factors: a pilot's rank (captain vs. first officer), type of aircraft flown (more pay goes with larger planes, such as the Boeing 747), and longevity. The greater a pilot's longevity, other things equal, the higher the pay—though longevity exceeding 12 years does not add to compensation. Seniority and longevity are distinct under the agreement; this case concerns longevity, a term that the agreement defines as all time since the date a pilot was hired, including time spent on furlough. This is a change from the pre-merger situation, in which pilots on furlough accrued seniority but not longevity.

Along with this main agreement, United and the Union forged a number of ancillary agreements that specified pilots' starting positions when the main agreement went into force. This suit concerns what the parties call "Letter of Agreement 25" ("Agreement 25" for short). Paragraph 4 of this side agreement provides that any pilot whose longevity is less than that of other pilots hired on or before May 6, 2008, is entitled to longevity credit for furlough time "only to the extent that such credit does not provide a pay longevity date prior to May 7, 2008." In other words, furlough time for this group of pilots cannot be used to produce more than four years and seven months of longevity (as of December 2012) when added to time on the job. Pilots in active service longer than four years and seven months thus receive no credit for time on furlough (but full credit for time worked); pilots who had four years and six months on the job could

benefit from only one month of furlough time; and so on. The two plaintiffs, who worked for the pre-merger United, contend that the effect of Agreement 25 is to slot approximately 475 former United pilots into the longevity table behind a group of former Continental pilots who were hired before May 6, 2008. Another part of Agreement 25 provides that, once an integrated seniority list has been established, the former United pilots may receive additional longevity credit for any furlough time not credited at the first stage, provided that the application of additional credit does not result in any former United pilot having more longevity than the next most senior former Continental pilot.

This suit began as a hybrid contract / duty-of-fair-representation claim against United and the Union. See *Vaca v. Sipes*, 386 U.S. 171 (1967). Plaintiffs accused United of not giving them longevity credit for all time they had spent on furlough, as they believe the main agreement requires, and accused the Union of not adequately representing their interests by letting United get away with this. United and the Union replied that the main agreement governs only the future, *after* Agreement 25 (and a host of other side agreements) determine the starting position for the post-merger seniority and longevity rosters. United asked the district judge to dismiss it as a party, observing that disputes about the meaning of a collective bargaining agreement in the airline industry are within the exclusive authority of an adjustment board under §2 Sixth and §204 of the Railway Labor Act, 45 U.S.C. §§ 152 Sixth, 184. The judge agreed and dismissed the suit against United. 2014 U.S. Dist. LEXIS 13414 at *8–28 (N.D. Ill. Feb. 4, 2014).

That left plaintiffs up the creek, because success in a hybrid contract/DFR suit depends on showing *both* that the employer violated the contract *and* that the union did not represent the workers fairly. *Vaca*, 386 U.S. at 187; *DelCostello v. Teamsters Union*, 462 U.S. 151, 164–65 (1983). Without a favorable decision from an adjustment board, which has exclusive authority over a breach-of-contract claim, the standard of *Vaca* cannot be met. That led plaintiffs to contend that the Union violated its duty of fair representation not (necessarily) by letting United get away with a breach of contract, but by negotiating a bad contract (Agreement 25) that favored a group of pre-merger Continental pilots over a group of pre-merger United pilots. The Supreme Court held in *Air Line Pilots Association, International v. O'Neill*, 499 U.S. 65, 67, 77–78 (1991), that a union can be held liable for negotiating an irrational agreement with an employer. But the district court concluded that Agreement 25 is not irrational, so the Union prevailed. 2014 U.S. Dist. Lexis 13414 at *28–36. Another district court reached the same conclusion in dismissing a challenge by other pilots to Agreement 26. *Gullaksen v. United Air Lines*, 2014 U.S. Dist. Lexis 131213 (D. D.C. Sept. 17, 2014). Plaintiffs have appealed the judgment in favor of the Union but do not contest the ruling in United's favor.

*O'Neill* holds that the approach of *Vaca*—under which a union violates the duty of fair representation by action that is "arbitrary, discriminatory, or in bad faith", 386 U.S. at 190—applies to negotiating collective bargaining agreements as well as to enforcing them. A union would act in bad faith if, for example, it disfavored members who supported a losing candidate for union office. Plaintiffs do not accuse the Union of doing that. A union would act discriminatorily if, for example, it favored members of one race over members

of a different race. Plaintiffs do not contend that race or any other prohibited characteristic played a role in the Union's negotiations, though plaintiffs do insist that the Union discriminated in favor of pilots from pre-merger Continental.

If the Union's leadership did that systematically, it would be political suicide; pre-merger United was the larger carrier, and its pilots would not allow the union to subordinate their interests. Anyway, this is not the sort of "discrimination" that *O'Neill* (another case arising from how the Air Line Pilots Association treated some pilots at Continental) envisages as problematic. The plaintiffs in *O'Neill* made an argument similar to the one our plaintiffs advance, and the Court gave a brusque reply, noting that "some form of allocation [between competing groups of pilots] was inevitable. A rational compromise on the initial allocation was not invidious 'discrimination' of the kind prohibited by the duty of fair representation." 499 U.S. at 81.

Just so in this case. If plaintiffs were arguing that pilots who came from Continental won all the battles, or even the lion's share of them, they might have a point. But plaintiffs have never argued that the Union disregarded the interests of pilots from pre-merger United, or that Agreement 25 reduced their benefits (recall that the collective bargaining agreement at pre-merger United had not afforded longevity credit during furlough time). All Agreement 25 does is limit the extent to which the credit-on-furlough provisions of the 2012 agreement apply retroactively. Because the suit was dismissed on the pleadings, we cannot tell why the Union and United struck the precise bargain they did, but allegations of the complaint, plus terms of the agreements, are enough in themselves to defeat a claim of discrimination.

This leaves the question whether the Union acted "arbitrarily." The Court had this to say in *O'Neill*, 499 U.S. at 78 (citations omitted):

> Any substantive examination of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities. For that reason, the final product of the bargaining process may constitute evidence of a breach of duty only if it can be fairly characterized as so far outside a "wide range of reasonableness," that it is wholly "irrational" or "arbitrary." The [contrary] approach of the Court of Appeals is particularly flawed because it fails to take into account … the strong policy favoring the peaceful settlement of labor disputes[.]

The Court in *O'Neill* found the union's decision not discriminatory because, with different pilots on different sides of a strike, a strike-ending compromise that favored some over others was inevitable. The Justices saw the union's negotiating position as rational (= not arbitrary) for essentially the same reason, adding that a different position (the one favored by the court of appeals) would have jeopardized labor peace and dropped the striking pilots into a lawsuit that they might well have lost outright to the pilots who crossed the picket lines. Likewise there was need of compromise here. Combining work forces following an airline merger is not for the faint-hearted. The Union and United worked out a series of deals, large and small, that have enabled two groups of pilots to work as one without undue friction. That's a significant accomplishment, not a source of legal liability.

AFFIRMED