In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 24-1719

ANTHONY B. SULLERS, SR.,

*Plaintiff-Appellant,*

*v.*

INTERNATIONAL UNION ELEVATOR CONSTRUCTORS, LOCAL 2,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-07696 — **Virginia M. Kendall**, *Chief Judge.*

_____

ARGUED DECEMBER 12, 2024 — DECIDED JUNE 27, 2025

_____

Before RIPPLE, SCUDDER, and MALDONADO, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Anthony Sullers, Sr., an elevator mechanic who is African American, brought this action against his union, the International Union of Elevator Constructors, Local 2 ("IUEC" or "the Union"). He alleged that IUEC had breached its duty of fair representation in its handling of his allegation of racial discrimination by his employer. Following discovery, IUEC moved for summary judgment. The Union submitted that, by obtaining the maximum remedy available

to Mr. Sullers, it had fulfilled its duty of fair representation to him. The district court[1] agreed and granted IUEC's motion. We now affirm the judgment of the district court.[2]

# I

# BACKGROUND

## A.

On November 19, 2018, ThyssenKrupp Elevator Corporation ("TKE"), Mr. Sullers's employer, informed him and another employee, Rick Taylor, that TKE did not have work for them and that they should "sit at home."[3] While Mr. Sullers was without work, TKE hired a white mechanic to work in a different department.

On December 7, 2018, Mr. Sullers and Mr. Taylor informed IUEC that they had been laid off. Juan Gonzalez, a Union representative, indicated that the Union would file grievances on their behalf. When Mr. Sullers said that he believed TKE had discriminated against him and indicated that he planned to file a complaint with the EEOC, John Valone, the Union's local president, advised Mr. Sullers to file a complaint with the Illinois Department of Human Rights ("IDHR"). Mr. Sullers

---

[1] The district court's jurisdiction was predicated on 28 U.S.C. § 1337(a), *Breininger v. Sheet Metal Workers International Ass'n Local Union No. 6*, 493 U.S. 67, 83–84 (1989); *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906, 921 (7th Cir. 1991), and on 28 U.S.C. § 1331, see *Nelson v. Stewart*, 422 F.3d 463, 470 n.5 (7th Cir. 2005); *Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 862 n.4 (7th Cir. 1997).

[2] Our jurisdiction is secure under 28 U.S.C. § 1291.

[3] R.70 at 5 ¶ 10.

followed that advice and filed a complaint with the IDHR on January 16, 2019.

Meanwhile, on December 11, 2018, IUEC filed a grievance with TKE on Mr. Sullers's behalf that requested backpay and alluded to Mr. Sullers getting "back to work."[4] The Statement of Grievance read, "Anthony Doyle told Anthony Sullers that they were getting slow and to sit at home for 2-3 weeks till work picked back up. While Tke [sic] hired another mechanic on 12/07/2018."[5] The grievance did not mention racial discrimination, but Mr. Sullers had not requested that the Union file a racial discrimination-based grievance on his behalf.[6]

Around January 24, 2019, TKE made its first settlement offer. Under the proposed terms, Mr. Sullers would be reinstated and receive $14,000 in backpay if he agreed to drop his IDHR claim. Mr. Sullers declined to do so. Despite his refusal, TKE reinstated Mr. Sullers on February 1, 2019, with the grievance outstanding.

Valone relayed TKE's second settlement offer on or about February 8, 2019: Mr. Sullers would receive $18,031.80 in backpay in exchange for dropping his IDHR claim. Again, he declined. According to Mr. Sullers, "Valone deployed a screaming rant that nothing would be done for Sullers unless

---

[4] R.68 at 214.

[5] *Id.*

[6] Mr. Sullers testified at his deposition that he wanted the Union to file a grievance alleging TKE's discrimination. He also admitted that he did not request that the Union do so.

and until he agreed to drop his charges in the IDHR against TKE."[7]

Thereafter, grievance negotiations stalled. When Mr. Sullers requested an update in December 2019, Valone replied, "Well, they made you an offer[,] and you turned them down."[8] Mr. Sullers then spoke with Eddie Christensen, the Union's regional director, who reiterated what Valone had told him, that the Union "can't make the company pay" him.[9]

IUEC sent Mr. Sullers's grievance to arbitration on December 31, 2019. Soon after, on January 11, 2020, Mr. Sullers filed a claim against the Union with the National Labor Relations Board ("NLRB"), alleging that IUEC had failed to represent him in his grievance. The NLRB dismissed the claim, in part because IUEC had referred the grievance to arbitration.

TKE made its third offer on April 24, 2020: Mr. Sullers would receive full backpay, without having to drop his IDHR claim. The Union accepted the offer and settled Mr. Sullers's grievance.

**B.**

On October 13, 2020, Mr. Sullers filed suit against IUEC in state court, alleging that the Union had breached its duty of fair representation under the National Labor Relations Act and the Illinois Human Rights Act. IUEC removed the case to the United States District Court for the Northern District of Illinois and moved to dismiss it. The district court granted

---

[7] Appellant's Br. 12.

[8] R.68 at 40.

[9] *Id.* at 41.

IUEC's motion to dismiss Mr. Sullers's state law claim, concluding that it was preempted. It denied the motion to dismiss his federal claim.

The Union later moved for summary judgment on Mr. Sullers's fair representation claim. The district court granted the motion. It first rejected Mr. Sullers's contention that IUEC had failed to investigate or to pursue a racial discrimination grievance on his behalf. It pointed out that Mr. Sullers never requested that IUEC file such a grievance; the only grievance form that he submitted did not mention racial discrimination. The court also concluded that any discriminatory conduct on TKE's part could not be imputed to the Union.

The court next turned to the content of the grievance that IUEC had filed. The court held that the Union did not act arbitrarily. IUEC presented Mr. Sullers with two settlement offers, submitted his grievance to arbitration, and then settled the grievance once TKE withdrew its condition requiring him to drop his IDHR claim. The court noted that the Union was Mr. Sullers's exclusive bargaining agent and that he had failed to show how he would have achieved a better outcome through arbitration. The court also rejected Mr. Sullers's claim of discrimination against IUEC, noting that a Union representative had advised that he pursue an IDHR claim against TKE. Finally, the court dismissed the bad faith claim because Mr. Sullers had "present[ed] only conclusory assertions with minimal factual support."[10] Mr. Sullers timely appealed.

---

[10] *Sullers v. Int'l Union of Elevator Constructors Loc. 2*, No. 20-C-7696, 2024 WL 1328800, at *7 (N.D. Ill. Mar. 28, 2024).

## II

## DISCUSSION

### A.

We begin our assessment of this appeal by addressing IUEC's submission that we ought to dismiss Mr. Sullers's claim because his opening brief does not comply with Federal Rule of Appellate Procedure 28. That rule requires that the brief contain the "appellant's contentions and the reasons for them, with citations to the authorities … on which the appellant relies." Fed. R. App. P. 28(a)(8)(A).

Although we "are generally disposed toward providing a litigant the benefit of appellate review[,] … we must also insist on compliance with procedural rules such as Rule 28 to promote our interest in the uniform administration of justice." *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). "In our adversarial system of adjudication, … we rely on the parties to frame the issues." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). "It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986).[11] Accordingly, a litigant's "[c]omplete failure to comply 'with Rule 28 will result in dismissal of the appeal.'" *Cole v. Comm'r of Internal Revenue*, 637

---

[11] *Accord John v. Barron*, 897 F.2d 1387, 1393 (7th Cir. 1990); *see also Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) ("The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.").

F.3d 767, 773 (7th Cir. 2011) (quoting *Anderson*, 241 F.3d at 545–46).[12]

Our insistence on this minimal requirement is no pedantic adherence to pointless formalism. When we are required to pause our adjudicative role and "to supply the legal research and organization [necessary] to make sense of the party's arguments," it impedes our ability to "perform[] our review function and … [to] evaluat[e] the judgment below." *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 792 (7th Cir. 2019).

Enforcing adherence to Rule 28's requirements also furthers society's interest in judicial economy. *See Smith v. Town of Eaton*, 910 F.2d 1469, 1470 (7th Cir. 1990) ("[W]hen the court system is burdened to capacity, and when judicial resources are stretched to the very limit, our fiduciary duty to the institution we serve and to *all* the litigants who come before us requires that we be vigilant in enforcing the bar's responsibility to present issues clearly and comprehensively."); *McCurry*, 942 F.3d at 790 ("Noncompliance with appellate rules wastes time and resources and frustrates the review process.").[13]

---

[12] Our sister circuits also enforce Rule 28's requirement for minimally adequate briefing. *See, e.g.*, *Kelley v. Alpine Site Servs., Inc.*, 110 F.4th 812, 817 (5th Cir. 2024) ("Appellants are required to present an argument and citations to supporting authority for each contention in their brief. They must provide meaningful analyses for each issue and present more than conclusory allusions as to their arguments for the issues to be properly raised on appeal." (citing Fed. R. App. P. 28(a)(8)(A))); *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003) (declining to consider statutes the appellant presented in a bullet-pointed list because the court "require[d] contentions to be accompanied by reasons").

[13] *See also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[I]n the long run, experience teaches that strict adherence to the procedural ( … continued)

Finally, for the sake of completeness, we pause to note that thorough briefing is especially important when the case concerns unsettled legal issues. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (finding the appellant's brief inadequate, "especially given that this area of law is quite unsettled"); *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (declining to reach a question of first impression when the briefing was inadequate). "Suffice it to say that for this court to wade into [an] unsettled sea, the litigant advocating it must do far more than baldly assert its applicability." *Crespo*, 824 F.3d at 674.

The requirements of Rule 28 are straightforward and attuned to the needs of effective appellate litigation: An appellant's "brief must contain an argument consisting of more than a generalized assertion of error, with citations to supporting authority." *Anderson*, 241 F.3d at 545. "As the focus sharpens on appeal, an appellate court requires 'more information and more comprehensive analysis than was provided for the district judge,' not less." *Brockett v. Effingham County*, 116 F.4th 680, 686 (7th Cir. 2024) (quoting *Salve Regina Coll. v. Russell*, 499 U.S. 225, 232 (1991)). Though the threshold for adequate briefing varies by case, briefs containing only minimal legal support do not pass muster. *See, e.g.*, *John v. Barron*, 897 F.2d 1387, 1393 (7th Cir. 1990) (dismissing an appeal where the one-page argument "fail[ed] to cite a statute, rule, case or any authority, except for an incorrect reference to a Wisconsin statute"); *Brockett*, 116 F.4th at 684–85 (suggesting that

---

requirements specified by the legislature is the best guarantee of even-handed administration of the law." (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980))); *United States v. Fisher*, 805 F.3d 982, 991 (10th Cir. 2015) ("[T]he appellant must present his claims in a way that does not compel us to scavenge through his brief for traces of argument.").

dismissal was appropriate where the appellant did not set forth the elements of his constitutional claim and cited only one case on the applicable doctrine).[14]

Nevertheless, given our system's preference for reaching a merits disposition whenever possible,[15] we often adjudicate the merits, despite poor briefing. For example, in *Smith v. Town of Eaton*, 910 F.3d 1469 (7th Cir. 1990), we reached the merits "because we c[ould] glean—albeit faintly—the basic facts and the general lines of argument from the briefs and record." *Id.* at 1471. However, we cautioned that the appellant's brief—which contained a "shallow, incoherent" twenty-five-page argument—came "very close" to warranting dismissal. *Id.* Similarly, in *Wonsey v. City of Chicago*, 940 F.3d 394 (7th Cir. 2019), we proceeded to the merits of the case, despite that the appellant's two-and-a-half-page

---

[14] *Cf. Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062–63 (7th Cir. 2020) (noting that the appellant waived an argument by "offer[ing] only a few cursory sentences in support of" it); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (concluding that the appellant waived an argument by devoting only "three conclusory, redundant sentences" to it); *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 659 (7th Cir. 2011) (noting that the appellant arguably waived an issue by "devot[ing] less than a single page of text in its 43-page brief" to developing the "cursory" argument); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (concluding that the appellant waived an issue he raised "as almost an afterthought, devoting only one sentence in his brief to" it and "citing no pertinent authority").

[15] *See Atkins v. Gilbert*, 52 F.4th 359, 361 (7th Cir. 2022) (per curiam) (declining to dismiss the appeal for failure to comply with Rule 28(a) because "we prefer to decide cases on the merits when we can"); *see also United States v. Adcock*, 534 F.3d 635, 642 (7th Cir. 2008) (preferring to reach the merits of an issue the appellant addressed directly in only five lines of his brief).

argument did "not attempt to show how the district court erred," did not mention her constitutional claims, and plagiarized a law review article. *Id.* at 398–99. We were able to discern that her "unsupported, careless, and irrelevant" arguments "fail[ed] to show an issue of material fact to preclude summary judgment." *Id.* at 401.[16]

In the present case, the section of Mr. Sullers's brief pertaining to the merits of his fair representation claim is sparse, spanning less than three pages. His only citations to legal authority appear when he sets out the general duty of fair representation. He presents the substance of his argument in six bullet points, without specifying to which of the three grounds for breach each belongs. However, given our preference for a merits disposition and our ability to discern, from the briefs and record, the basic facts and Mr. Sullers's general contentions, we can address the merits of Mr. Sullers's claim in this relatively straightforward case. *See Smith*, 910 F.2d at 1471.

---

[16] *See also McCottrell v. E.E.O.C.*, 726 F.2d 350, 351 (7th Cir. 1984) (considering the appellant's "woefully inadequate" one-page brief that "set[] forth a discernible, albeit unsupported, argument" but warning pro se litigants that "[h]enceforth, … this court may dismiss an appeal where the brief submitted contains no identifiable argument"); *Calix v. Lynch*, 784 F.3d 1000, 1003 (5th Cir. 2015) (reaching the merits of a contention by an appellant who cited one case, even though it was a "thin argument," because "when the authority itself is thin, that may be sufficient"); *cf. United States v. McBride*, 94 F.4th 1036, 1047–49 (10th Cir. 2024) (affirming its "discretion to reach the merits of a claim despite briefing deficiencies" but declining to do so).

**B.**

We review the district court's grant of summary judgment de novo, construing the record in the light most favorable to Mr. Sullers and drawing all reasonable inferences in his favor. *See Bishop v. Air Line Pilots Ass'n Int'l*, 5 F.4th 684, 693 (7th Cir. 2021) (hereinafter "*Bishop II*"). Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In conducting our review, we 'may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.'"[17] *Bishop II*, 5 F.4th at 693 (quoting *Johnson v. Rimmer*, 936 F.3d 695, 705–06 (7th Cir. 2019)).

A union's duty of fair representation arises out of its statutory right to exclusive representation. *See Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018) (hereinafter "*Bishop I*"); 29 U.S.C. § 159(a). Concomitant with the union's authority to act as its members' exclusive bargaining agent is its legal obligation to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). The Supreme Court has applied this duty to all aspects of union activity[18] and has likened it to "the duty owed by other

---

[17] Mr. Sullers submits that the district court improperly made credibility determinations. We disagree and proceed instead to the merits of his claim.

[18] This duty was initially established in a series of racial discrimination cases and then expanded to cover all union activity. *See Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 202–03 (1944); *Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991).

fiduciaries to their beneficiaries." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67, 74 (1991).[19]

A union breaches its duty of fair representation if its actions are arbitrary, discriminatory, or in bad faith. *Vaca*, 386 U.S. at 190. These factors constitute three separate grounds for breach. *See Bishop II*, 5 F.4th at 693. Thus, "to successfully defend against a motion for summary judgment on a duty of fair representation claim, the plaintiff must point the court to record evidence supporting any one or all of these elements." *Griffin v. Air Line Pilots Ass'n, Int'l*, 32 F.3d 1079, 1083 (7th Cir. 1994). Additionally, the plaintiff must show that he was harmed by the union's breach, such that "the outcome … would probably have been different but for the union's activities." *Rupcich v. United Food & Com. Workers Int'l Union*, 833 F.3d 847, 854 (7th Cir. 2016) (alteration in original) (quoting *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995)).

To assess arbitrariness, we conduct a "very deferential," "objective inquiry." *Bishop II*, 5 F.4th at 693 (first quoting *Griffin*, 32 F.3d at 1083; and then quoting *Bishop I*, 900 F.3d at 397). We have cautioned that "courts should not substitute their judgment for that of the union, even if, with the benefit of hindsight, it appears that union could have made a better call." *Trnka v. Loc. Union No. 688, United Auto., Aerospace & Agric. Implement Workers*, 30 F.3d 60, 61 (7th Cir. 1994) (quoting *Ooely v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1302 (7th Cir. 1992)). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape," they are "so far

---

[19] *See also Vaca*, 386 U.S. at 182 (noting that the duty stands "as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law").

outside a wide range of reasonableness" that they are "irrational." *O'Neill*, 499 U.S. at 67 (citation and internal quotation marks omitted). Although "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion," *Vaca*, 386 U.S. at 191, it has "considerable discretion" in handling grievances. *Garcia*, 58 F.3d at 1176 (quoting *Seymour v. Olin Corp.*, 666 F.2d 202, 208 (5th Cir. Unit B 1982)). In so doing, the union must minimally investigate employee grievances, "but the thoroughness of this investigation depends on the particular case." *Id.* And the union may consider all members' interests "when deciding whether or not to press the claims of an individual employee." *Id.* (quoting *Seymour*, 666 F.2d at 208).[20] Moreover, it is not required to pursue all grievances through arbitration. *See Vaca*, 386 U.S. at 191.[21]

Determining whether a union's conduct is discriminatory or in bad faith involves a subjective inquiry. *See Bishop II*, 5 F.4th at 694 (quoting *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003)). To establish breach of the duty of fair representation under either of these prongs, the plaintiff must prove "that the union acted (or failed to act) due to

---

[20] *See also Reed v. Int'l Union of United Auto., Aerospace & Agric. Implement Workers, Loc. Union No. 633*, 945 F.2d 198, 203 (7th Cir. 1991) ("[U]nions are traditionally accorded broad discretion in determining whether and to what extent an employee's grievance should be prosecuted."); *Addington v. US Airline Pilots Ass'n*, 791 F.3d 967, 983 (9th Cir. 2015) ("A union must act in the general interest of its membership, and it may have to compromise on positions that will inevitably favor a majority of its members at the expense of other of its members.").

[21] *See also Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003) ("Rather, it has discretion to act in consideration of such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer.").

an improper motive." *Neal*, 349 F.3d at 369. Improper motives are "obviously irrelevant and invidious," *Steele v. Louisville & Nashville Railroad Co.*, 323 U.S. 192, 203 (1944), and include, for example, distinctions based on race or sex. *See Bishop II*, 5 F.4th at 694.

To constitute a breach, "discriminatory conduct must be 'intentional, severe, and unrelated to legitimate union objectives.'" *Id.* (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 301 (1971)). A union acts "discriminatorily if, for example, it favor[s] members of one race over members of a different race." *Cunningham v. Air Line Pilots Ass'n, Int'l*, 769 F.3d 539, 542 (7th Cir. 2014). However, it is not enough that the plaintiff is a member of a minority group within the union and is "adversely affected" by the union's actions. *Bishop II*, 5 F.4th at 694 (quoting *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 621 (6th Cir. 2010)). He must show that "the union acted with hostile or discriminatory intent." *Id.* (quoting *Merritt*, 613 F.3d at 621).

A union acts in bad faith when it intentionally "deprive[s] an employee of [his] rights under the collective bargaining agreement—whether ultimately out of personal antipathy, political differences or merely to avoid work." *Bennett v. Loc. Union No. 66, Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union*, 958 F.2d 1429, 1438 (7th Cir. 1992).[22] Union conduct that is fraudulent, dishonest, or otherwise "intentionally

---

[22] *See also Dober v. Roadway Express, Inc.*, 707 F.2d 292, 294 (7th Cir. 1983) (describing bad faith as "a case where the union[] know[s] that the worker has a possibly meritorious grievance but [is] unwilling to prosecute it effectively because the worker is on the outs with the union or is a member of some racial or other minority or is not a union man").

misleading" also can be evidence of bad faith. *Bishop II*, 5 F.4th at 694–95 (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)).[23] We have cautioned, however, that "it is not necessarily appropriate to look at a single officer's conduct to determine the reasons that the union acted because the individual officer's 'motivations are not always the same as the motivations of the union as a whole.'" *Bishop II*, 5 F.4th at 697 (quoting *Barton Brands, Ltd. v. N.L.R.B.*, 529 F.2d 793, 798 (7th Cir. 1976)).[24]

## C.

Having set forth the principles governing this appeal, we now apply those principles to the case before us. Mr. Sullers submits generally that IUEC breached its duty of fair representation by acting arbitrarily, discriminatorily, and in bad faith. He presents six points of evidence which he asserts create genuine issues of material fact but does not specify to which of these three categories each belongs. We nevertheless think it fair to summarize Mr. Sullers's contentions as follows. He submits that, despite its knowledge of TKE's racially discriminatory conduct, IUEC failed to file a racial discrimination grievance on his behalf. Mr. Sullers also maintains that IUEC representatives expressed hostility toward racial discrimination grievances. We conclude that Mr. Sullers's

---

[23] *See also Bennett v. Loc. Union No. 66, Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union*, 958 F.2d 1429, 1438–39 (7th Cir. 1992) (noting that a union member's attempt to conceal his act that harmed the plaintiff was evidence of bad faith).

[24] *See also Filippo v. N. Indiana Pub. Serv. Corp., Inc.*, 141 F.3d 744, 750 (7th Cir. 1998) (concluding that one union member's statements did not establish an improper motive); *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 129–30 (2d Cir. 1998) (same).

evidence, whether viewed in isolation or collectively, does not raise a genuine issue of material fact as to whether IUEC acted arbitrarily, discriminatorily, or in bad faith.

The Union, in its discretion, filed for Mr. Sullers a grievance that did not include allegations of racial discrimination. For his part, Mr. Sullers did not request that IUEC pursue a grievance based on racial discrimination. *See Neal*, 349 F.3d at 370–71 (affirming that a union was entitled to summary judgment where employees failed to submit forms requesting that the union file grievances on their behalf).[25] Instead, the record indicates that Mr. Sullers told a union representative that he intended to file a complaint with the EEOC concerning TKE's discrimination. The representative advised Mr. Sullers to file his complaint with the IDHR—advice Mr. Sullers followed. To the extent Mr. Sullers believes the Union should have pursued a grievance against TKE based on racial discrimination that he alleges pervaded the company, IUEC was entitled to choose a different approach in fulfilling its duty of fair representation. *See Garcia*, 58 F.3d at 1176 ("The union may also consider the merits of the case or the effect on the larger collective bargaining unit in making various strategic decisions during the grievance procedure.").[26] Absent evidence of

---

[25] *Cf. Woods v. Graphic Commc'ns*, 925 F.2d 1195, 1198, 1203 (9th Cir. 1991) (determining that a union breached its duty of fair representation by declining to file a racial grievance when an employee asked "at least three times").

[26] *See also Addington*, 791 F.3d at 983. As noted *supra*, adequate briefing is particularly important when legal issues are unsettled. We have yet to decide whether, in the fair representation context, unions have an affirmative duty to prevent employers' racial discrimination. *Cf. E.E.O.C. v. Pipefitters Ass'n Loc. Union 597*, 334 F.3d 656, 660–61 (7th Cir. 2003) (holding ( … continued)

arbitrariness, discrimination, or bad faith, neither we nor union members are entitled to dictate a union's strategy. *See Griffin*, 32 F.3d at 1083 ("It is not the court's role to second-guess tactical decisions made by employees' duly appointed bargaining representative.").[27]

Mr. Sullers also submits that Valone and Gonzalez were hostile to racial discrimination claims. Assuming for purposes of summary judgment that Valone did indeed scream at Mr. Sullers to drop his IDHR claim, evidence of one official's conduct does not support a finding that the Union was improperly motivated in its handling of Mr. Sullers's grievance. *See Bishop II*, 5 F.4th at 697. Nor does Gonzalez's testimony evince an improper motive. Counsel posed a hypothetical during Gonzalez's deposition, asking whether IUEC would investigate if TKE were to fire all its African American mechanics in quick succession without terminating any white mechanics. Gonzalez replied that he did not think so because the terminations could be performance-based, such that the

that, in the Title VII context, a union's "inaction, unless invidious, is not discrimination in any accepted sense of the term"). *But see Bishop v. Air Line Pilots Ass'n Int'l*, 5 F.4th 684, 698 n.55 (7th Cir. 2021) (expressing skepticism as to whether "Title VII tests and standards have direct application to the duty of fair representation"); *Addington*, 791 F.3d at 983 (noting differences between Title VII and the duty of fair representation). Given the sparse nature of the briefing, we decline to resolve the question here when the judgment can be affirmed without reaching the issue.

[27] *See Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1177–78 (7th Cir. 1995) ("We must defer to the Union's strategic choices unless they are irrational, discriminatory or in bad faith."); *cf. O'Neill*, 499 U.S. at 78 ("Any substantive examination of a union's performance … must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.").

Union would have no grounds to pursue grievances. However, he testified elsewhere, "If we were told there were some kind of racial discriminatory action, would we inquire and look into it? Of course."[28] Therefore, when examined in totality, Gonzalez's testimony does not reveal an invidious motive.

Finally, even if we were to conclude that IUEC acted arbitrarily, discriminatorily, or in bad faith, Mr. Sullers cannot show the harm necessary to demonstrate a breach of the duty of fair representation. *See Rupcich*, 833 F.3d at 854; *Souter v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers, Loc. 72*, 993 F.2d 595, 597–98 (7th Cir. 1993). In *Souter*, an employee filed a grievance which his union pursued until he was reinstated and received backpay. 993 F.2d at 597–98. We rejected the employee's claim for additional relief from his union because "[t]he union properly represented him, and he prevailed." *Id.* at 598. In much the same way, IUEC pursued Mr. Sullers's grievance until he was reinstated and received backpay. He offers no evidence of harm attributable to the Union's strategic decision to fulfill its duty of fair representation in the manner that it chose.

To conclude, IUEC's decision to pursue Mr. Sullers's grievance as it did—instead of filing a racial discrimination grievance which he did not request—was not arbitrary, discriminatory, or in bad faith.

---

[28] R.71-1 at 42.

**Conclusion**

The judgment of the district court is affirmed.

AFFIRMED